Erin Rose Ronstadt, SBN 028362
Kevin Koelbel, SBN 016599
OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oberpekas.com
kevin@oberpekas.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kerrie Bainum, a single woman,<br><br>Plaintiff,<br><br>v.<br><br>The Prudential Insurance Company of America, a plan fiduciary and claims administrator; PruValue Insurance Benefits Trust, a plan fiduciary; and Arizona Community Foundation Long Term Disability Coverage, an ERISA plan,<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT** |

For her claims against Defendants The Prudential Insurance Company of America ("Prudential"), PruValue Insurance Benefits Trust, and Arizona Community Foundation Long Term Disability Coverage (the "Plan") (collectively "Defendants"), Plaintiff Kerrie Bainum ("Ms. Bainum" or "Plaintiff") alleges as follows:

## JURISDICTION, VENUE AND PARTIES

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2. The Plan is a purported ERISA benefit plan established and maintained by the Arizona Community Foundation (the "ACF") for the benefit of its employees. The Plan is a welfare benefit plan that offers long-term disability ("LTD") benefits. It is defined as a "line of coverage under the Group Contract."

3. The Plan provides financial protection for employees by paying a portion of their income while they have a long period of disability.

4. Plaintiff is informed and believes that ACF is the Plan Administrator, Plan Sponsor, and Employer.

5. At all relevant times, Prudential administered claims for ACF under the Plan, acted on behalf of the Plan, and acted as an agent for ACF.

6. Prudential fully insures LTD benefits under the Plan with a Policy, Group Contract Number PVIB-05 (the "Policy").

7. Prudential pays benefits under the Plan from the PruValue Insurance Benefits Trust.

8. The Policy identifies PruValue Insurance Benefits Trust as the Contract Holder.

9. At all relevant times, Ms. Bainum was a participant and beneficiary of the Plan as an employee of ACF.

10. Ms. Bainum is a single person. She currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all relevant times.

11. Prudential has its principal place of business in the state of New Jersey. Prudential is licensed and authorized to do business in Maricopa County, Arizona, and resides and is found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

12. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

13. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

14. Prudential has a duty to administer the Plan prudently and in the best interest of all Plan members and beneficiaries. Ms. Bainum is informed and believes that Prudential is either a "named fiduciary" of the Plan, pursuant to 29 USC § 1133(2);

and/or a "deemed fiduciary" pursuant to 29 USC § 1002 (21)(A); and/or a "designated fiduciary" pursuant to 29 USC § 1105(c)(1)(B).

## GENERAL ALLEGATIONS

15. All previous and subsequent paragraphs are incorporated by reference.

16. Ms. Bainum began working for ACF on July 30, 2001. As of her last day worked, she held the position of Deputy Financial Officer. This position required an accounting degree or CPA designation. In addition to the educational requirements, Ms. Bainum had an extensive and impressive work history that further qualified her for the job.

17. Ms. Bainum was considered an executive for ACF.

18. Ms. Bainum was very passionate about her position and worked extremely hard to reach this level of achievement. She was in no hurry to leave ACF and had planned on retiring from ACF with full retirement funds to support her. It was in Ms. Bainum's best interest, financially and personally, to continue working.

19. Ms. Bainum struggled with her disability since the very beginning of her employment with ACF.

20. Unfortunately, due to a decline in her disabling medical conditions and complications thereof, Ms. Bainum's last date of sustained full-time work was March 23, 2012.

21. To be eligible for LTD benefits, Ms. Bainum must satisfy the definition of "Disability" under the Plan. For the first 24 months, Ms. Bainum must be "unable to perform the material and substantial duties of [her] regular occupation due to [her] sickness or injury." She must also have "a 20% or more loss in [her] monthly earnings due to that sickness or injury" and be "under the regular care of a doctor." After 24 months, Ms. Bainum must be "unable to perform the duties of any gainful occupation for which [she is] reasonably fitted by education, training or experience." In order to be considered gainfully employed, Ms. Bainum must be able to be employed earning at least 60% of her pre-disability salary.

22. Under the Plan, Ms. Bainum is entitled to receive LTD benefits until she reaches age 67, or until she is no longer disabled. She is entitled to receive 60% of her monthly earnings before deductible sources of income.

23. There is no limitation under the Plan for "self-reported symptoms."

24. Ms. Bainum suffers from multiple medical conditions that render her disabled under the Plan.

25. Ms. Bainum applied and was approved for LTD benefits in a letter dated October 2, 2012.

26. As part of the initial LTD approval, Prudential triaged Ms. Bainum's claim for "segmentation." Her claim was ultimately recommended for "segment 1" and approved, presumably because she was expected to improve and be able to return to work.

27. Ms. Bainum is informed and believes that her claim was initially approved because of being classified as segment 1.

28. On Prudential's recommendation and requirement, Ms. Bainum applied for Social Security Disability Insurance ("SSDI") benefits. The Social Security Administration (the "SSA") awarded SSDI benefits to Ms. Bainum on August 19, 2013 with an established onset date of disability of March 24, 2012. Prudential took a monthly offset, as well as collected an overpayment for back benefits paid by the SSA.

29. At Prudential's request, Dr. Charles Bliss performed a file review. In a report dated March 13, 2014, Dr. Bliss opined that Ms. Bainum would be able to function on a part-time basis (4 hours per day/5 days per week) with multiple restrictions and limitations ("R&Ls"). Dr. Bliss acknowledged multiple complications in Ms. Bainum's recovery and noted that these may continue to cause problems over time. Dr. Bliss opined that Ms. Bainum would be able to transition into full time work **if** her conditions improved. However, even if Ms. Bainum were able to return to work full-time, she would indefinitely require R&Ls.

30. On April 9, 2014, Prudential secured an employability analysis ("EA") by Melinda Griffin White, MS, CRC, which was primarily based on Dr. Bliss's R&Ls. Ms. Griffin concluded that no part-time occupations could be identified that would meet the targeted gainful wage requirements under the Plan.

31. In an April 10, 2014 letter, Prudential found that Ms. Bainum could not be gainfully employed under the Any Gainful Occupation definition of the Plan, based on her medical conditions, R&Ls, and gainful wage requirements.

### *First Denial of LTD Benefits*

32. When Ms. Bainum did not improve within the six-month timeframe estimated by Dr. Bliss, Prudential transferred the file to Disability Claims Manager ("DCM") William Truesdale.

33. Ms. Bainum is informed and believes that DCMs have limited financial authority to approve claims. So, DCMs take claims to file reviews or claims discussions/roundtables to set game plans and determine segmentation. Depending on the segment, or "flight path," it is transferred to specially trained DCMs, such as William Truesdale, who are directed to terminate claims.

34. In a letter dated February 9, 2015 (the "Denial"), Prudential terminated Ms. Bainum's LTD benefits, alleging that she no longer met the definition of Disability.

35. The Denial was largely based on a paper file review by Dr. Ben Hur P. Mobo dated January 13, 2015. In his report, Dr. Mobo opines that Ms. Bainum's gastrointestinal issues improved from November 25, 2013 to present to support some work capacity with the exception of June 9, 2014 through June 29, 2014; wherein, she was deemed without work capacity.

36. Dr. Mobo opined that the restrictions and limitations outlined by Ms. Bainum's treating gastroenterologist, Dr. Lewkowitz, were not medically necessary.

37. Unlike Dr. Lewkowitz, Dr. Mobo did not physically examine Ms. Bainum. Dr. Mobo's opinion is based solely on a paper review of the file. Additionally,

1  Dr. Mobo did not communicate with Ms. Bainum's treating physicians for clarification
2  regarding her medical conditions.

3        38.    Dr. Mobo does not specialize in gastroenterology or neurology, the areas
4  of medicine for which he provided opinions.

5        39.    Dr. Mobo's report directly contradicts not only Ms. Bainum's treating
6  physicians, but also Prudential's March 13, 2014 gastroenterology review by Dr. Bliss.

7        40.    Although not mentioned in the Denial, Prudential ordered surveillance
8  that was conducted on December 11, 2014. The surveillance is entirely consistent with
9  Ms. Bainum's reported limited functionality.

10        ***Ms. Bainum Timely Appealed The Denial***

11        41.    Through legal counsel, Ms. Bainum timely appealed the Denial in a letter
12  dated August 7, 2015 and associated administrative record (the "Appeal").

13        42.    On appeal, Ms. Bainum provided additional evidence to Prudential
14  substantiating her ongoing disability.

15        43.    The additional evidence submitted on appeal included updated medical
16  records demonstrating objective physical examination findings and diagnostic results,
17  including imaging and lab work, indicative of her disabling conditions and resulting
18  complications. The medical records document ongoing severe symptomology.

19        44.    Although not required under the Plan, Ms. Bainum provided objective
20  testing and diagnostic findings to verify the disabling effects caused by a multitude of
21  medical conditions.

22        45.    Ms. Bainum's providers have consistently stated that she is unable to work
23  and have limited her to a less than sedentary capability.

24        46.    On February 21, 2014, treating provider Dr. Fry completed Prudential's
25  *Capacity Questionnaire*, and on October 16, 2014 Dr. Lewkowitz completed
26  Prudential's *Capacity Questionnaire*. In these *Capacity Questionnaires*, both Drs. Fry
27  and Lewkowitz assessed that Ms. Bainum could <u>not</u> work full-time or part-time.

28

-6-

47. In a letter dated July 23, 2015, Dr. Fry stated that, "[he] agree[s] with her specialist [Dr. Lewkowitz] that she has significant limitations in regards to being able to perform full-time employment whether it be sedentary or otherwise."

48. In a letter dated July 30, 3015, Dr. Lewkowitz stated that Ms. Bainum could not perform duties of employment on a consistent basis. He explained that, although Ms. Bainum's medical conditions had improved in some ways since November 2013, her "condition is one that is of [an] intermittent symptomatic type," and symptoms still occur. He notes that, at times, Ms. Bainum is extremely symptomatic and "unable to do even the most menial of tasks."

49. Dr. Lewkowitz also reviewed Dr. Mobo's report and disagreed with his paper. Dr. Lewkowitz maintained his assessment regarding Ms. Bainum's R&Ls as outlined in his October 16, 2014 *Capacity Questionnaire*.

50. In the Denial, Prudential opined that Ms. Bainum was capable of performing the duties of her Regular Occupation. To clarify Ms. Bainum's current work capabilities, she underwent a vocational evaluation by Mark Kelman, M.S, C.R.C., C.V.E. that is summarized in a July 22, 2015 report. Mr. Kelman reviewed various documents from Ms. Bainum's file, as well as personally met with Ms. Bainum on July 20, 2015. Mr. Kelman concluded that:

> [A]ssuming Ms. Bainum could do part time work, she would not be able to reach the 60% target rate of her pre-disability wage nor would she be able to maintain employment on a regular and ongoing basis. Further, Ms. Bainum's treating physicians have opined that she is totally disabled and incapable of even part time work – assuming this, her pre-disability wage requirement becomes a moot point. Either way, Ms. Bainum would not be able to sustain any gainful employment, full-time or part-time, that would meet the qualifications under the Plan.

Mr. Kelman concluded that, "it is the opinion of this Consultant that Ms. Bainum should be considered totally disabled based on the totality of the medical reports, as

well as her inability to reach any gainful employment within 60% of her pre-disability salary."

51. Among other evidence provided on Appeal, Ms. Bainum drafted a sworn statement regarding her medical conditions and serious hardship caused by Prudential's termination.

52. Despite treatment, Ms. Bainum continues to experience ongoing significant medical impairments that prevent her from performing any type of work that meets the targeted gainful wage requirements under the Plan.

### *Prudential Upheld Its Denial of Ms. Bainum's LTD Benefits*

53. In a letter dated September 9, 2015 (the "Second Denial"), Prudential upheld its previous Denial.

54. The Second Denial was largely reliant upon the opinions of two new file reviewers, Drs. Steven Tawil and Joseph Rea, as well as a new EA by Melba Wood, MA, CRC.

55. At Prudential's request, Drs. Tawil and Rea collaborated on their reports.

56. Drs. Tawil and Rea did not have complete medical records, including but not limited to Dr. Lewkowski's July 30, 2015 letter.

57. Drs. Tawil and Rea did not review the surveillance video, instead relied on the surveillance report at face value.

58. Both Drs. Tawil and Rea unreasonably disregarded Ms. Bainum's treating provider opinions. Unlike Ms. Bainum's treating providers, neither Drs. Tawil nor Rea physically examined Ms. Bainum. Their opinions are based solely on a paper review of parts of the file. Additionally, they did not reach out to Ms. Bainum's treating physicians for clarification regarding her medical conditions.

59. In his report dated August 26, 2015, Dr. Tawil opined that Ms. Bainum had no R&Ls whatsoever regarding her gastroenterology conditions from February 9, 2015 to present – a stark contrast from Ms. Bainum's treating provider assessments, not

to mention Prudential's own file reviewers. It is unrealistic and fundamentally biased to assume no R&Ls when the evidence, at a minimum, indicates at least some limitations. Such opinions should be disregarded or, at least, viewed with heavy skepticism.

60. Dr. Tawil's opinion is also contrary to Dr. Bliss' opinion that Ms. Bainum will have permanent R&Ls.

61. Dr. Tawil did not acknowledge or address several pertinent diagnostic findings. These include but are not limited to consistently elevated blood levels indicating inflammation and infection. Dr. Tawil also failed to mention several pertinent findings on imaging, instead he cherry-picked the "negative" findings.

62. Dr. Tawil opined that Ms. Bainum was not disabled, in part because she did not take various medications. This demonstrated Dr. Tawil's poor grasp of Ms. Bainum's treatment. Ms. Bainum either did in fact take the medications mentioned by Dr. Tawil, or else did not take the agents because of the significant side effects, such as skin cancer. Dr. Tawil unreasonably focused on what medications Ms. Bainum was not taking versus the medications she was taking and ignored the reasons she could not take others.

63. In his August 26, 2015 report, Dr. Rea opined that Ms. Bainum had R&Ls as follows:

- Lifting, pushing, pulling carrying up to 20 pounds occasionally
- Standing and walking for up to 30 minutes at a time, but no more than four hours in an eight hour period
- Avoid squatting, crawling, and crouching
- Limit stooping or bending to a rare basis (less than occasional)
- Climb stairs and kneel on an occasional basis

Dr. Rea opined that Ms. Bainum could engage in a conventional full-time work schedule as available with these R&Ls being in place permanently. Dr. Rea makes this assertion despite opining that Ms. Bainum's "symptomatic problems have a sound basis, given the

1  surgical experience and subsequent ongoing effects from significant inflammatory bowel
2  disease."

3      64.    Dr. Rea did not consider Ms. Bainum's peripheral vascular disease in his
4  assessment.

5      65.    On September 8, 2015, Melba Wood, MA, CRC completed the second EA,
6  which was largely based on Drs. Tawil and Rea's reports. Ms. Wood identified five (5)
7  occupations that Ms. Bainum could perform based on the R&Ls provided by Dr. Rea.
8  Ms. Wood did not consider the R&Ls issued by Ms. Bainum's treating providers.

9      66.    Prudential failed to properly consider the medical records, Ms. Bainum's
10 treating providers' assessments, and the SSA's finding of disability. Instead, Prudential
11 heavily relied on their paper-reviewers' opinions, despite them never having physically
12 examined Ms. Bainum.

13 ***Ms. Bainum Submitted a Voluntary Appeal, Which Was Also Denied***

14     67.    Ms. Bainum submitted a second, voluntary appeal on March 8, 2016. She
15 provided additional medical records, including a new hospital admission, and an
16 addendum report from Mr. Kelman addressing Prudential's new EA.

17     68.    Ms. Bainum also submitted evidence of Dr. Tawil and Rea's bias as
18 reviewers for insurance companies.

19     69.    Prudential upheld its Denial in a letter dated May 31, 2016 (the "Final
20 Denial"). It ignored Mr. Kelman's report, ignored Ms. Bainum's subjective complaints,
21 and had the same reviewers provide addendums to their reports, engaging in the same
22 arbitrary and capricious conduct. They also identified newly disclosed gainful
23 occupations that Plaintiff could purportedly do based on a new Vocational Report
24 secured after the Denial, and to which Plaintiff was deprived the opportunity to respond.

25     70.    Ms. Bainum requested all relevant documents on June 9, 2016.

26     71.    Prudential conducted surveillance again after she submitted the second,
27 voluntary appeal. Once again, the surveillance was consistent with reported limited
28

1 functionality. This surveillance also constitutes new evidence relied upon after Denial
2 that Plaintiff never had a chance to address on appeal.

### *Ms. Bainum Remains Disabled Under the Plan*

72. Ms. Bainum's medical conditions have never improved to a level indicative of work activity that meets the targeted gainful wage requirements under the Plan.

73. Ms. Bainum is totally disabled from her Regular Occupation and Any Gainful Occupation.

74. Ms. Bainum continues to be Disabled as defined by the Plan for LTD benefits eligibility.

75. Ms. Bainum should be entitled to LTD benefits until she is 67 years old.

76. ACF did not properly confer Prudential with discretionary authority under the Plan, so Ms. Bainum is entitled to a *de novo* review of her claims. In fact, the only document that confers discretion to Prudential is an "ERISA Statement," which expressly disclaims being a part of the Plan.

77. Prudential acted under a structural conflict of interest in both administering and paying claims under the Plan.

78. Ms. Bainum is further entitled to *de novo* review of her claims, because of Prudential's structural conflict of interest and its "wholesale and flagrant violations of the procedural requirements of ERISA." Prudential should not be entitled to any deference in its decision-making in light of the facts and circumstances of this claim.

79. Ms. Bainum has exhausted her administrative remedies under the Plan.

80. Ms. Bainum has satisfied all of the jurisdictional prerequisites to filing a claim, and her claim is timely before this Court.

81. On information and belief, Ms. Bainum may be entitled to additional benefits from ACF as a disabled employee including, but not limited to, health insurance, life insurance, supplemental LTD benefits, and retirement/pension credits.

82. Ms. Bainum is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in an effort to enforce her rights under the Plan.

## COUNT I
### (Recovery of Plan Benefits)
### (All Defendants)

83. All previous and subsequent paragraphs are incorporated by reference.

84. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.  Defendants are the Plan, Plan administrators, or Plan fiduciaries of the Plan under ERISA.

85. The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Bainum is age 67 or no longer disabled under the terms of the Plan.

86. Ms. Bainum became disabled in 2012 and continues to be disabled. She is unable to perform the duties of any gainful occupation under the terms of the Plan. She has claimed the benefits under the Plan to which she is entitled.

87. Ms. Bainum reasonably expected that her conditions met the requirements of Disability as defined by the Plan for LTD benefits, and that she would receive benefits under the Plan until age 67 or until she was no longer disabled.

88. Despite the coverage of Ms. Bainum's disability, Prudential has improperly terminated LTD benefits to Ms. Bainum in breach of the Plan and ERISA.

89.  Prudential's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and was clearly erroneous. Prudential's actions justify the Court reducing the level of discretion afforded to Prudential.

90. Prudential has a structural conflict of interest because it is both administering and paying the claim. Plaintiff is informed and believes that Prudential makes claims decisions based on the claims resources and financial risk it faces on certain claims.

91. In light of Prudential's structural conflict of interest, as well as wholesale and flagrant procedural violations of ERISA, Ms. Bainum should be entitled to *de novo* review.

92. Prudential did not properly consider all of the available evidence when denying Plaintiff's benefits. In doing so, Prudential failed to conduct a full and fair review. For example, Prudential did not properly consider Ms. Bainum's treating provider assessments or even consult with her providers.

93. Prudential misstated and/or misrepresented medical evidence for its own financial benefit. Prudential relied on findings that constitute "clearly erroneous findings of fact" in making its benefit determinations. For example, Prudential and its paper reviewers ignored pertinent medical evidence that was favorable to the continuation of Ms. Bainum's LTD benefits, instead focusing their review on negative medical findings, blatantly ignoring other significant, positive findings.

94. Prudential tainted its medical file reviewers in the review process by failing to provide them all of the pertinent documentation. This includes but is not limited to the failure to provide Dr. Lewkowski's July 30, 2015 letter and the surveillance video (versus only the surveillance report).

95. Prudential further tainted its medical file reviewers, Drs. Tawil and Rea, by requesting they collaborate on their reports, thus preventing independent reviews.

96. On information and belief, the file reviewers and vendors were financially incentivized to deny Ms. Bainum's claim. MES Solutions/Peer Review Services ("MES") and Managing Care Managing Cost ("MCMC") are biased companies, which frequently provide insurance companies with reviews that are favorable for the denial of claims. Prudential's physician reviewer, Dr. Mobo, was provided by MCMC. Prudential's independent medical examiners, Drs. Tawil and Rea, were provided by MES. Prudential knew or should have known that MCMC and MES are biased companies. As a company-wide practice, Prudential uses these companies, because it knows they provide reviews that are favorable to the denial of claims.

97. Prudential used MCMC and MES in Ms. Bainum's claim, because it knew that the reviews would be unfavorable for the continuation of her benefits.

98. Prudential fails to ensure that MCMC and MES are not biased companies and are actually producing independent reports when it retains them.

99. Prudential unreasonably failed to ensure that MCMC and MES provided unbiased and/or qualified reviewing doctors for purposes of its claims administration.

100. Drs. Mobo, Tawil, and Rea had no reasonable basis for their recommended R&Ls and have a history of bias against claimants, which demonstrate the lack of objectivity and reliability of their reports.

101. On information and belief, Drs. Mobo, Tawil, and Rea have been retained by Prudential on numerous occasions to conduct claims reviews or other evaluations.

102. The peer reviewers were not given important documents for reaching the decision that Ms. Bainum could perform sedentary work.

103. Prudential improperly put greater weight on the opinions of the paper file reviewers and failed to properly consider the opinions of Ms. Bainum's treating and examining physicians. Ms. Bainum's treating providers, specifically, Drs. Fry and Lewkowski are more familiar with her medical conditions and have treated her for these medical conditions on or before the date she last worked due to her disability. Additionally, Ms. Bainum's treating providers have physically examined and observed her on multiple occasions (the paper file reviewers have not). In fact, Prudential has never had a doctor physically examine Ms. Bainum. Additionally, none of Prudential's file reviewers ever reached out to Ms. Bainum's treating physicians for clarification regarding her medical conditions. Prudential failed to explain why it credited the physician reviewers over Ms. Bainum's treating physicians.

104. Prudential failed to reasonably consider Ms. Bainum's reported symptoms and limitations in determining whether she was disabled under the Plan. The medical evidence provided for Prudential's review offered objective evidence to substantiate Ms. Bainum's symptoms and provide credibility to her complaints.

105. Prudential acted arbitrarily and capriciously when it selectively reviewed Ms. Bainum's medical records, relying only on those portions of her medical records that supported a denial of benefits.

106. Prudential has been determined to deny Ms. Bainum's claim. It failed to provide Ms. Bainum with a description of any additional material or information "necessary" to "perfect the claim" and to do so "in a manner calculated to be understood by the claimant." Prudential "hid the ball" from Ms. Bainum by failing to advise her of what was needed to approve the LTD claim. Prudential's adversarial actions precluded Ms. Bainum from responding to Prudential's rationale for denial at the administrative level.

107. Prudential never conducted the so-called "de novo clinical review" alleged in its internal notes. It failed to disclose relevant documents, including those regarding the segmentation, or flight paths, of claims.

108. Ms. Bainum is informed and believes that William Truesdale failed to keep complete internal notes.

109. On information and belief, Prudential did nothing to insulate the appeal review from its initial determination. For example, Prudential provided bias documentation to the new file reviewers, Drs. Tawil and Rea, including the Denial and Dr. Mobo's January 13, 2015 report.

110. Prudential relied on new evidence in its Final Denial, depriving Ms. Bainum of a full and fair review under ERISA. It created a moving target for securing benefits, which demonstrates its conflict of interest.

111. Given Ms. Bainum's medical conditions and symptoms, she cannot perform the material and substantial duties of Any Gainful Occupation.

112. Ms. Bainum has afforded Prudential every opportunity to act prudently and to fairly consider her claim but instead, Prudential pursued to terminate her claim, regardless of the medical evidence provided on appeal.

113. Prudential is not entitled to an arbitrary and capricious standard of review of their decision in this action, so Ms. Bainum's claims are entitled to *de novo* review with a bench trial on the record.

114. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Ms. Bainum is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

115. Ms. Bainum is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

116. Pursuant to 29 U.S.C. § 1132(g), Ms. Bainum is entitled to recover her attorneys' fees and costs incurred herein from Prudential.

117. Ms. Bainum is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**COUNT II**
**(Breach of Fiduciary Duty)**
**(Defendant Prudential)**

118. All previous and subsequent paragraphs are incorporated by reference.

119. Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

120. Prudential had actual or apparent authority to act as a fiduciary on behalf of the Plan.

121. Prudential's third-party vendors had actual or apparent authority to act as fiduciaries on behalf of the Plan and administered the Plan in providing services to Defendants

122. Ms. Bainum has "other equitable relief" available to her in several forms, including but not limited to surcharge. A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position she would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary. In equity, this Court must make Ms. Bainum whole following Prudential's breach of trust" and mold the relief to protect the rights of the beneficiary. Therefore, the Court has broad discretion to fashion appropriate relief.

123. Prudential is a fiduciary and owes fiduciary duties to Plan participants, including Ms. Bainum. Under 29 U.S.C. § 1104(a), Prudential is required to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a). Under ERISA, which is founded in trust principles, Prudential is required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

124. In multiple ways throughout the administration of Plaintiff's claim, Prudential breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3). Prudential's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because Prudential's claims handling was discharged imprudently and caused Ms. Bainum harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B). As a result of Prudential's breaching conduct, Ms. Bainum has suffered great financial hardship. She can no longer afford and maintain the house she was planning on retiring in. Her expense outflow is significantly exceeding her cash inflow. Additionally, Ms. Bainum's expenses have increased due to her medical needs. She has had to liquidate investments to make ends meet. She no longer has a sufficient amount of retirement savings. This has only occurred because of Prudential terminating her LTD benefits. The financial stress has caused strain on her relationships with family and friends. Ms. Bainum now owes significant attorneys' fees because of Prudential's breaching conduct. Prudential

arbitrarily and capriciously denied Ms. Bainum's benefits, which constitutes a breach of fiduciary duty. To the extent that Prudential's arbitrary and capricious denials of benefits caused Ms. Bainum harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), that harm is recoverable under 29 U.S.C. §§ 1132(a)(3).

125. Prudential's structural conflict of interest constitutes a breach of fiduciary duty. Prudential failed to discharge their duties solely in the interest of Ms. Bainum as a Plan participant. Plaintiff is informed and believes that Prudential institutes company-wide efforts to deny claims based on financial liability instead of merits. As an institution, Prudential uses claim payment reduction goals and cost containment measures as a method of profit-making for the company. In so doing, Prudential unfairly and arbitrarily reduces or denies payments on legitimate claims in an across-the-board fashion to attain its numerical reduction goals. Prudential's cost containment measures are consistent with and a part of a corporate-wide plan and scheme. Prudential's claims segmentations, or "flight paths," are a manifestation of its breaching conduct.

126. On information and belief, Prudential did not have proper safeguards to ensure that its focus on profitability did not affect how its employees handled, evaluated, and assessed claims.

127. On information and belief, Prudential instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals, including but not limited to Prudential employees who worked on Ms. Bainum's claim.

128. Ms. Bainum is informed and believes that Prudential's employees are trained in administering claims in the best interests of Prudential, not Plan participants. Ms. Bainum is informed and believes that Prudential incentivizes its employees to "manage" claims in Prudential's best interests, including but not limited to her claim.

129. After discovery, injunctive relief may be an appropriate equitable remedy to address Prudential's breach of fiduciary duty. Ms. Bainum may enjoin future improper claims handling activities that may lead to wrongful denials in order to prevent future delays in payments.

130. Prudential was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Ms. Bainum's benefits for its own profit.

131. Prudential engaged in several procedural violations in an attempt to circumvent its obligations under ERISA, and these violations are by definition under 29 U.S.C. § 1132(a)(3) conduct that can be enjoined by this Court.

132. ERISA "does not elsewhere adequately remedy" the injuries caused to Ms. Bainum by Prudential's breach of fiduciary duty violations.

133. As a direct and proximate result of the breaches of fiduciary duty, Ms. Bainum suffered actual financial harm and incurred financial expense.

134. Prudential was unjustly enriched as a result of its breach of fiduciary duty.

135. Ms. Bainum is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

136. Pursuant to 29 U.S.C. § 1132(g), Ms. Bainum is entitled to recover her attorneys' fees and costs incurred herein.

137. Ms. Bainum is entitled to enjoin any act or practice by Prudential, which violates ERISA or the Plan, and/or she is entitled to seek other appropriate equitable relief that is traditionally available in equity.

**WHEREFORE**, on all claims, Ms. Bainum prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A. All LTD benefits due under the terms of the Plan;

B. Clarifying and determining Ms. Bainum's rights to future benefits under the terms of the Plan;

C. All other equitable relief that is proper as a result of Defendants' breach of fiduciary duties, including injunctive relief and surcharge;

D. An award of Ms. Bainum's attorneys' fees and costs incurred herein;

E. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

F.   For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 17th day of August 2016,

                OBER & PEKAS, PLLC

                By: *s/ Erin Rose Ronstadt*
                    Erin Rose Ronstadt
                    Kevin Koelbel
                    Attorney for Plaintiff

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745